IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMBROSIO VILLALOBOS,

        Plaintiff,

v.                                 No. CIV-11-0854 LAM

MICHAEL J. ASTRUE,  Commissioner
of the Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum* *(Doc. 17)* (hereinafter "**Motion**"), filed March 21, 2012. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 4* and *7*]. The Court has reviewed Plaintiff's *Motion (Doc. 17)*, Defendant's *Response to Plaintiff's Motion to Reverse or Remand (Doc. 18)*, filed May 21, 2012, Plaintiff's *Reply to Defendant's Response to Motion to Reverse and Remand (Doc. #18) (Doc. 19)*, filed June 5, 2012, and  the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Docs. 13* and *14*].[1] For the reasons set forth below, the Court **FINDS** that the decision of the Commissioner of the Social

---

[1]Citations to the Record (*Docs. 13* and *14*) are to the Court's CM-ECF page numbers in this document.

Security (hereinafter "Commissioner") should be **AFFIRMED** and Plaintiff's *Motion* should be **DENIED**.

## I.  Procedural History

On February 27, 2008, Plaintiff protectively filed applications for Disability Insurance Benefits (hereinafter "DIB") and Supplemental Security Income (hereinafter "SSI"), alleging that he became disabled on February 1, 2008.  [*Doc. 13-7* at 17-23 and 24-26].[2]  Plaintiff stated that he became disabled due to a seizure disorder and forgetfulness (*Doc. 13-8* at 7).[3]  His applications were denied at the initial level on June 10, 2008 (*Doc. 13-5* at 2-5 and 6-8) and at the reconsideration level on January 13, 2009 (*id.* at 11-13 and 14-16).  On March 23, 2009, Plaintiff requested a hearing (*id.* at 18), and on March 15, 2010, Administrative Law Judge Ann Farris (hereinafter "ALJ") conducted a video hearing (*Doc. 13-3* at 19-38).  Plaintiff was not represented at the hearing.  *Id.* at 21.  Both Plaintiff and vocational expert Tammie C. Donaldson (hereinafter "VE") testified at the hearing.  *Id.* at 25-32 and 32-36; *see also Doc. 13-3* at 13.

On July 7, 2010, the ALJ issued her decision, finding that under the relevant sections of the Social Security Act, Plaintiff was not disabled.  [*Doc. 13-3* at 13-18].  Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 8) and, on July 29, 2011, the Appeals Council

---

[2]The Court notes that the dates on the applications are May 8, 2008 (*Doc. 13-7* at 17 and 24), but the parties and the Administrative Law Judge appear to agree that Plaintiff's protective filing date was February 27, 2008 (*see Doc. 17* at 1, *Doc. 18* at 2, and *Doc. 13-3* at 13).  The Social Security Administration explains that: "Protective filing is a Social Security term for the first time you contact the Social Security Administration to file a claim for disability or retirement.  Protective filing dates may allow an individual to have an earlier application date than the actual signed application date."  *See* Social Security Disability Resource Center http://www.ssdrc.com/disabilityquestionsmain20.html, last accessed November 6, 2012.

[3]Plaintiff also has prostate cancer, diagnosed in February 2009, and hepatitis C.  *See* [*Doc. 17* at 1] and [*Doc. 13-8* at 33, 39 and 42].

denied Plaintiff's request for review (*id.* at 3-7), which made the ALJ's decision the final decision of the Commissioner.  On September 26, 2011, Plaintiff filed his complaint in this case.  [*Doc. 1*].

## II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may

undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 405.1505(a), 416.905(a). In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity;" and (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) either meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work

in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

## IV.  Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on November 5, 1962.  [*Doc. 13-8* at 2].  Plaintiff has worked as a clerk at a hardware store, as a field hand, as a nursing assistant, and as a "pca/nurse asst."  [*Doc. 13-8* at 8].  Plaintiff alleges that he became disabled on February 1, 2008, and he is unable to work because of his seizure disorder and forgetfulness (*id.* at 7), as well as cancer and hepatitis C [*Doc. 17* at 1] and [*Doc. 13-8* at 33, 39 and 42].

Plaintiff's medical records document treatment and records from Memorial Medical Center (*Doc. 13-9* at 7-38, 41-44, *Doc. 13-10* at 2-7, *Doc. 14-1* at 13-39, 42-45, *Doc. 14-2* at 2-22, 26-40, *Doc. 14-3* at 2-7, 24-26, 37-38, *Doc. 14-4* at 7-26, *Doc. 14-5* at 13-14, 16-19, 22-25, 34-37, *Doc. 14-6* at 3-53, *Doc. 14-7* at 2-15); Memorial Medical Center Healthplex /Division of Imaging Services (*Doc. 14-2* at 23-25); Sierra Vista Hospital (*Doc. 14-3* at 39); Hatch Ambulance Service (*Doc. 13-9* at 39-40, *Doc. 14-1* at 12, 40-41); Ben Archer Health Center (*Doc. 14-1* at 6, 8-9, *Doc. 14-3* at 9-23, *Doc. 14-5* at 4-10, 28, *Doc. 14-7* at 16); Laboratory Corporation of America (*Doc. 14-3* at 27-36, *Doc. 14-5* at 11-12, 15); the New Mexico Department of Health (*Doc. 14-5* at 26); and the Mayo Clinic (*Doc. 14-5* at 31).  Plaintiff's medical records include: a Physical Residual Functional Capacity Assessment by Mark A. Werner, M.D., dated June 9, 2008 (*Doc. 14-4* at 27-34); and a Case Analysis by N.D. Nickerson, M.D., dated January 12, 2009 (*Doc. 14-5* at 21). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2008, the alleged onset date of Plaintiff's disability. [*Doc. 13-3* at 15].  At step two, the ALJ found that Plaintiff has the following severe impairment: "seizure disorder associated with alcohol abuse." *Id.*  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.* at 16.

Before step four, the ALJ determined that Plaintiff has the RFC to perform a full range or work at all exertional levels, "but with nonexertional limitations necessitating the employment of standard seizure precautions such as avoiding hazards to unprotected heights, dangerous machinery, and should avoid moderate exposure to pulmonary irritants." *Id.*  In support of the RFC finding, the ALJ states that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." *Id.* at 17.  The ALJ noted that the medical evidence indicates that Plaintiff's "seizures are relatively predictable in that they almost always occur when he is drinking," and that "[a]n EEG study was normal and contradicts the presence of actual epilepsy."[4]  *Id.*  The ALJ further stated that the medical evidence does not indicate that Plaintiff's prostate and bladder surgeries were unsuccessful, and that the medical evidence does not support a finding that Plaintiff "has significant pulmonary problems and may require oxygen therapy." *Id.*  At step four, the ALJ found that Plaintiff is capable of performing his past relevant work as a store clerk and nursing assistant. *Id.*  The ALJ, therefore,

---

[4]The ALJ cites to an "Electroencephalography Report" at *Doc. 14-5* at 16.

determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 17-18.

# V.  Analysis

Plaintiff contends that the ALJ erred in her conclusion that Plaintiff can perform his past relevant work because: (1) the ALJ failed to include all of Plaintiff's limitations in her RFC finding and failed to develop the record with regard to those limitations; and (2) the ALJ failed to determine the physical and mental demands of Plaintiff's past work.  [*Doc. 17* at 8-12].  In addition, Plaintiff contends that the ALJ erred in eliciting testimony from the VE without first reviewing Plaintiff's past work functions, age, education, and all of Plaintiff's restrictions.  *Id.* at 13-14.  As relief, Plaintiff asks the Court to remand the case for a new hearing.  *Id.* at 15.

In his response, Defendant disputes Plaintiff's contentions, and states that the ALJ properly developed the record and included all of Plaintiff's limitations in her RFC finding, the ALJ properly relied on the VE's testimony regarding Plaintiff's past relevant work, and the ALJ's hypothetical questions to the VE at the hearing were not improper.  [*Doc. 18* at 4-13].  Defendant, therefore, states that the ALJ's decision is based on substantial evidence and the ALJ used correct legal standards in evaluating the evidence, so the Commissioner's final decision should be affirmed.  *Id.* at 13-14.

## A.  The ALJ's RFC Finding

Plaintiff's first claim is that the ALJ erred by failing to include all of Plaintiff's limitations in her RFC finding, specifically, limitations relating to depression, anxiety, urinary leaking, sleep problems, and reading ability, and that the ALJ erred by failing to develop the record regarding these

7

limitations. [*Doc. 17* at 9-12]. Plaintiff notes that the Appeals Council had before it a letter from Plaintiff's treating physician, Dr. Lugo, dated August 20, 2010, in which he states that Plaintiff had begun counseling for depression and anxiety. *Id.* at 9 (citing *Doc. 14-7* at 16). Plaintiff also states that "there was other evidence in the record suggesting either a mental impairment, or concentration and memory problems that could be attributed to a mental impairment." *Id.* at 9 (citing *Doc. 14-3* at 11, *Doc. 14-5* at 6, and *Doc. 13-8* at 18). Plaintiff also points to evidence in the record regarding his incontinence and sleep and reading problems. *Id.* at 10-11 (citing *Doc. 13-3* at 25-28). Plaintiff further contends that the ALJ's finding at step two that Plaintiff's seizure disorder is severe conflicts with her finding at step four that the impairment can be controlled absent alcohol use. *Id.* at 11. Plaintiff contends that such a finding "is akin to a finding that the alcohol use is material, and it requires a special analysis that the ALJ did not employ." *Id.* at 11-12.

In response, Defendant states that the letter from Dr. Lugo "furnishes virtually no probative information regarding Plaintiff's alleged depression and anxiety," and that Plaintiff did not mention depression or anxiety during his testimony or in his disability reports. [*Doc. 18* at 5]. Defendant notes that nowhere in the record is Plaintiff diagnosed or treated for any mental impairments, and that the evidence suggests that some of the symptoms cited by Plaintiff as indicative of a mental impairment may be, instead, related to Plaintiff's alcohol-related seizure disorder. *Id.* at 7. Defendant further contends that Plaintiff failed to mention any functional limitations regarding his urinary incontinence or sleep problems at the hearing, and that Plaintiff did not connect his reading difficulty with any medically-determinable impairment. *Id.* at 7-8. Defendant states that the ALJ did not err in finding that Plaintiff's seizure disorder is well-controlled absent alcohol use, and that

the ALJ properly incorporated functional limitations relating to the seizure disorder in her RFC finding. *Id.* at 8-9. Finally, Defendant contends that the ALJ was not required to conduct an analysis for alcohol use because the ALJ did not find that Plaintiff was disabled. *Id.* at 9.

In his reply, Plaintiff contends that he was not required to explain his mental limitations at the hearing because he was not represented by counsel until after the Appeals Council denial, and that the ALJ was required to develop the record based on evidence regarding a possible mental impairment. [*Doc. 19* at 2-3].

### 1. Dr. Lugo's August 20, 2010 Letter

The letter from Dr. Lugo is dated August 20, 2010, which is more than a month after the ALJ's July 7, 2010, decision, and it states that Plaintiff "*now* has Depression with Anxiety and is followed by a mental health provider," which indicates that Plaintiff's depression and treatment started after the ALJ's decision. *See* [*Doc. 14-7* at 16] (emphasis added). The Appeals Council is required to consider additional evidence offered on administrative review, after which it becomes part of the record on judicial review, if the evidence is: (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). In this case, however, the Appeals Council considered the letter in its review of the ALJ's decision. *See* [*Doc. 13-3* at 3-6]. In *Krauser v. Astrue*, 638 F.3d 1324 (10th Cir. 2011), the Tenth Circuit considered a case with a similar set of circumstances, where the Appeals Council considered evidence regarding a mental impairment that was not before the ALJ and involved evidence that may not have qualified as new, material, and related to the relevant period. The Tenth Circuit declined to definitively resolve the question of whether the Court is required to

9

consider whether evidence that has been accepted by the Appeals Council should have been accepted, or whether the Court is bound by the Appeals' Council's decision to accept the evidence. *Id.* at 1328.  The Tenth Circuit, instead, decided to affirm the Appeals Council's rejection of the defendant's depression impairment, even with the new evidence, because "the only evidence of diagnosis and treatment of depression is in a report prepared two and a half months after the ALJ's decision[, a]nd that report does not purport to retroactively diagnose a condition existing in the period preceding the ALJ's decision, much less does it indicate any impaired functioning relating back to that period."  *Id.* at 1329.  As further explained below, the Court here similarly finds that there is no evidence in the record of diagnosis or treatment of a mental impairment, and Dr. Lugo's letter does not purport to retroactively diagnose a mental impairment existing in the period before the ALJ's decision.  The Court, therefore, rejects Plaintiff's contention that this letter provides evidence of a mental impairment that should have been accounted for in the ALJ's RFC determination.

### 2.  Evidence in the Record

In order to determine whether evidence is sufficient to raise an issue requiring further investigation, "the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) (citation omitted).  Here, the evidence on which Plaintiff relies regarding his alleged mental impairment and impairments related to incontinence, sleep and reading, does not indicate the existence of an impairment requiring further investigation.  While Plaintiff cites to passing references in the record that he was fatigued and

anxious, had difficulty with his memory and with understanding, and had problems with incontinence, sleep, and reading, none of this evidence demonstrates the existence of a medically determinable impairment. *See Doc. 17* at 9-11 (citing *Doc. 14-3* at 11, *Doc. 14-5* at 6, *Doc. 13-8* at 18, and *Doc. 13-3* at 25-28). As the Tenth Circuit explained in *Krauser*, an ALJ is not required to take into account or develop the record regarding alleged impairments for which there is no medical testing, diagnoses, or treatment, and "[a] couple of isolated, passing references to depression buried in the record hardly suggested that the medical personnel who examined [the claimant] had missed or ignored a serious mental illness." 638 F.3d at 1327. The Court, therefore, finds that there is not enough evidence in the record to suggest the existence of an impairment, and the ALJ's RFC determination regarding Plaintiff's limitations was not in error.

### 3. *Plaintiff's Alcohol Use*

Plaintiff next contends that the ALJ's finding that his seizure disorder is severe at step two conflicts with her finding at step four that the disorder can be controlled absent alcohol use. [*Doc. 17* at 11]. The cases upon which Plaintiff relies for this contention, however, do not support Plaintiff's claim. In *Sandoval v. Barnhart*, No. 06-2097, 197 Fed. Appx. 801, 803, 2006 WL 2964431 (10th Cir. Oct. 18, 2006) (unpublished), the Tenth Circuit held that it was improper for the ALJ to rely on the grids to find the claimant disabled when the ALJ had previously found at step two that the claimant's back pain was a severe impairment, because reliance on the grids is improper where a claimant suffers from non-exertional impairments, such as pain. In this case, however, the ALJ did not rely on the grids for her RFC determination, so the holding in *Sandoval* is not instructive. In *Timmons v. Barnhart*, No. 04-7007, 118 Fed. Appx. 349, 353,

2004 WL 2005931 (10th Cir. Sept. 9, 2004) (unpublished), the Tenth Circuit found that the ALJ's

finding that the claimant's loss of his left eye was a severe impairment "appears inconsistent with

[the ALJ's] conclusion that the eye impairment would pose only an 'insignificant' effect on the

claimant's ability to do a full range of sedentary work," and that the ALJ "[a]t the very least . . .

should have explained how a 'severe' impairment at step two became 'insignificant' at step five."

That case is distinguishable, however, because here, the ALJ did not merely state that Plaintiff's

seizure disorder poses only an insignificant effect on his ability to perform a full range of work at

all exertional levels, but, instead, the ALJ provided for non-exertional limitations to the RFC to

account for Plaintiff's seizure disorder, "such as avoiding hazards to unprotected heights, dangerous

machinery, and [that Plaintiff] should avoid moderate exposure to pulmonary irritants." [*Doc. 13-3*

at 16].   Moreover, in contrast to the ALJ's decision in *Timmons*, the ALJ here explained how

Plaintiff's impairment could be controlled by abstaining from alcohol use and noted the evidence

in the record which supported this finding, such as that Plaintiff's "seizures are relatively predictable

in that they almost always occur when he is drinking," and that "[a]n EEG study was normal and

contradicts the presence of actual epilepsy." [*Doc. 13-3* at 17].   This finding is further supported

by the evidence relied on by the ALJ that Plaintiff's seizures were accompanied by admitted alcohol

use (*id.* at 16), and that Plaintiff testified at his hearing "that he had almost completely quit

drinking," and that "his last documented seizure occurred a year before the hearing" (*id.* at 16-17).

The Court, therefore, finds that the ALJ's finding of a severe impairment at step two does not

conflict with her later statement that, "[a]bsent alcohol use, [Plaintiff's] seizure disorder is well

controlled."   *Id.*

The Court also finds that the ALJ was not required to conduct an alcohol-use analysis for

Plaintiff because such an analysis is required only when a claimant is found to be disabled. *See*

20 C.F.R. §§ 404.1535(a), 416.935(a) ("If we find that you are disabled and have medical evidence

of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism

is a contributing factor material to the determination of disability.").  Neither of the cases upon

which Plaintiff relies for this contention required an alcohol-use analysis absent a prior finding of

disability, so these cases do not support Plaintiff's contention. *See* [*Doc. 17* at 12] (citing *McGoffin*

*v. Barnhart*, 288 F.3d 1248, 1252-53 (10th Cir. 2002) and *Drapeau v. Massanari*,

255 F.3d 1211, 1214-1215 (10th Cir. 2001)).  The Court finds that this claim is also without merit

### B.  Plaintiff's Past Relevant Work

Next, Plaintiff contends that the ALJ erred by failing to make findings or question Plaintiff

about his past relevant work.  [*Doc. 17* at 12].  At step four, the ALJ is required to make findings

of fact regarding three phases: (i) the individual's physical and mental RFC; (ii) the physical and

mental demands of the individual's past work, and (iii) the ability of the individual to return to past

work in light of the individual's RFC.  *See Winfrey v. Chater*, 92 F.3d 1017, 1023-25

(10th Cir. 1996); SSR 82-62, 1975-1982 Soc.Sec.Rep.Serv. 809, 813, 1982 WL 31386.  Here, the

VE identified Plaintiff's past work by the codes in the Dictionary of Occupations Titles (hereinafter

"DOT"), and testified that Plaintiff could perform this past work despite the limitations as set forth

in the RFC.  [*Doc. 13-3* at 34].  In her step-four finding, the ALJ states: "The [VE] present at the

hearing testified that [Plaintiff's past relevant work as a store clerk and nursing assistant] does not

require the performance of work-related activities precluded by [Plaintiff's RFC]," and that "[i]n

comparing [Plaintiff's RFC] with the physical and mental demands of this work, I find that he is able to perform such work as it is generally performed in the national economy."  [*Doc. 13-3* at 17]. While the ALJ did not ask Plaintiff about the specific duties of his past work, this is not error because the ALJ found that Plaintiff could perform his past work as it is generally performed in the national economy, so the specifics of how Plaintiff actually performed his past work are irrelevant. *See* SSR 82-61, 1975-1982 Soc.Sec.Rep.Serv. 836, 1982 WL 31387 at *2:

> [A] claimant will be found to be 'not disabled' when it is determined that he or she retains the RFC to perform:
>
> > 1.   The actual functional demands and job duties of a particular past relevant job; *or*
> >
> > 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

The case upon which Plaintiff relies for his contention that the ALJ erred by failing to make inquiries and specific findings regarding the actual duties of Plaintiff's past work is distinguishable because, in that case, the Tenth Circuit explained that when a claimant has a mental impairment, the ALJ must make specific inquiry into and findings regarding whether the claimant's mental impairment is compatible with the past relevant work.  *See Winfrey*, 92 F.3d at 1024-25.  Since there is no finding of a mental impairment here, the ALJ did not  err in failing to inquire into Plaintiff's specific job duties.

In addition, the Court finds that Plaintiff's contention that the ALJ erred by relying on the VE's testimony fails because the VE considered Plaintiff's medically-established limitations and how those limitations may affect his past relevant work.  *See Doyal v. Barnhart*, 331 F.3d 758, 761

14

(10th Cir. 2003) (holding that the ALJ properly relied on the VE's testimony in support of his own findings at phases two and three of step four); and *Zaricor-Ritchie*, No. 11-5074, 452 Fed. Appx. 817, 825, 2011 WL 6243216 (10th Cir. Dec. 15, 2011) (unpublished) (upholding the ALJ's step-four finding wherein he relied on the VE's testimony which was based on the claimant's past relevant work as described in the DOT). Plaintiff's contention in his reply that he "probably should not undertake" a job as a nursing assistant given his seizure disorder, does not render the VE's or ALJ's findings to be in error, and the Court cannot re-weigh the evidence or substitute its judgment for that of the Commissioner. [*Doc. 19* at 5]; *see Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). For these reasons, the Court finds that the ALJ die not err by relying on the VE's testimony regarding Plaintiff's past work, and this claim should be denied.

### C. The ALJ's Hypothetical Questions to the VE

Finally, Plaintiff contends that the ALJ erred by "elicit[ing] testimony from the [VE] without reviewing the functions required of his past work, or asking [Plaintiff] to state his age and education." [*Doc. 17* at 13]. Hypothetical questions must reflect a claimant's impairments and his limitations as supported by the evidence in the record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (finding that the ALJ's hypothetical questions to the VE correctly reflected the ALJ's findings with respect to the claimant's condition and credibility) (citations omitted). Hypothetical inquiries "must include all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (citations omitted). "[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments

15

cannot constitute substantial evidence to support the Secretary's [now, Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (citation and internal quotation marks omitted).

Here, the ALJ asked the VE whether a person of the same age, education and work history as Plaintiff could perform his past relevant work with the restrictions that are in the RFC, including clarification of these limitations by stating "avoid exposure to hazardous conditions, including unprotected heights, which includes ladders and scaffolds, and dangerous moving machinery[;] . . . he cannot drive, and [] he must avoid more than moderate exposure to pulmonary irritants, including gas, fumes, odors and gases." [*Doc. 13-3* at 34].  After considering this information, the VE stated that Plaintiff could perform his past relevant work as a nursing assistant and a sales clerk.  *Id*.  The Court finds no error in this hypothetical.  First, the hypothetical encompassed all of the limitations that are in the RFC determination, and the Court has previously found that the ALJ was not required to include any further limitations in the RFC.  *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding that the ALJ properly posed a hypothetical question to the VE which included all the limitations the ALJ ultimately included in his RFC assessment, and rejecting claimant's contention that the ALJ was required to recite all of claimant's possible impairments in the hypothetical).  With regard to Plaintiff's age, Plaintiff stated at the hearing that he was 47, so the VE had that information presented to her at the hearing.  *See* [*Doc. 13-3* at 26].  With regard to Plaintiff's education, while the ALJ did not ask Plaintiff to state his education level at the hearing, that information was included in the exhibits before the VE, and the VE stated at the hearing that she had reviewed them and had heard Plaintiff's testimony.  *See* [*Doc. 13-3* at 34]; *see also*

16

[*Doc. 13-6* at 19] (letter to VE enclosing exhibits for the hearing) and [*Doc. 13-8* at 12] (Plaintiff's Disability Report, stating that he completed the 8th grade).   Moreover, Plaintiff fails to explain how this information was relevant to Plaintiff's impairments and limitations, which is the information that must be presented in the hypothetical to the VE.   *See Decker*, 86 F.3d at 955 (explaining that hypothetical questions must reflect a claimant's impairments and his limitations as supported by the evidence in the record).   Moreover, Plaintiff's age and education is not relevant to the step-four inquiry because the ALJ found that Plaintiff can perform his past relevant work.   *Compare* 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3) (explaining that, if a claimant *can* perform his or her past relevant work, the claimant's age and education will *not* be considered) *with* 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1) (explaining that, if a claimant *cannot* perform his or her past relevant work, the claimant's age and education *will* be considered as appropriate).   The Court also finds no error in the ALJ asking the VE about other jobs in the national economy, even though the ALJ ultimately found that Plaintiff could perform his past relevant work.   Plaintiff fails to provide any support for his contention that this was error, and the Court does not find any.   For these reasons, the Court finds that the ALJ properly questioned the VE, and this claim should be denied.

## **VI.  Conclusion**

For the reasons stated above, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the record as a whole and comports with relevant legal standards.   Accordingly, the Court will **AFFIRM** the decision of the Commissioner and **DENY** Plaintiff's ***Motion***.

IT IS THEREFORE ORDERED that the decision of the Commissioner is **AFFIRMED** and Plaintiff's ***Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum (Doc. 17)*** is **DENIED**.  A final order will be entered concurrently with this Memorandum Opinion and Order.

IT IS SO ORDERED.

_Lourdes A. Martinez_
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**